FILED
SCRANTON
JUL 08 2024
PER____DJ____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER BETANCOURTH, | |
| Plaintiff, | CIVIL ACTION NO. 3:22-CV-00060 |
| v. | |
| | (MEHALCHICK, J.) |
| PENNSYLVANIA CORRECTIONS OFFICER KNORR, et al., | |
| Defendants. | |

## MEMORANDUM

Before the Court is a motion for reconsideration filed by Defendant Pennsylvania Corrections Officer Knorr ("Officer Knorr"). (Doc. 42). Prisoner-Plaintiff Christopher Betancourth ("Betancourth") initiated this 42 U.S.C. § 1983 civil rights action by filing a complaint on January 11, 2022, while incarcerated at the State Correction Institution in Dallas, Pennsylvania ("SCI-Dallas"). (Doc. 1). On March 17, 2023, Betancourth filed an amended complaint alleging Officer Knorr violated his Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983." (Doc. 17).

Officer Knorr filed the instant motion for reconsideration on April 12, 2024, in response to the Court's denial of his motion for summary judgment. (Doc. 35; Doc. 36; Doc. 42). Specifically, Officer Knorr avers that this Court incorrectly concluded that administrative remedies were unavailable to Betancourth because the Pennsylvania Department of Corrections ("DOC") failed to meet the deadlines set by their own exhaustion procedures. (Doc. 42). Accordingly, Officer Knorr requests that this Court "reconsider its March 29, 2024, Order (Doc. 36) on the issue of Exhaustion of Administrative Remedies, vacate that Order,

and issue an Order granting summary judgment in favor of [Officer Knorr.]" (Doc. 42, at 3). On May 10, 2024, Officer Knorr filed a brief in support of this position. (Doc. 45). On May 23, 2024, Betancourth filed a brief in opposition. (Doc. 46). For the following reasons, Officer Knorr's motion for reconsideration is **DENIED**. (Doc. 42).

I. FACTUAL BACKGROUND

This factual background is taken from the parties' statements of material facts and accompanying exhibits as they relate to the motion for summary judgment Officer Knorr now requests this Court reconsider. (Doc. 22; Doc. 27). During the relevant period, Betancourth was incarcerated in the Restricted Housing Unit ("RHU") at SCI-Dallas. (Doc. 22, ¶ 1; Doc. 22-2, at 2). Officer Knorr worked as a correctional officer in the RHU at SCI-Dallas. (Doc. 22, ¶ 2; Doc. 22-2, at 8). On April 17, 2020, Officer Knorr and Betancourth got into an altercation during the RHU's lunch service that resulted in Officer Knorr pressing Betancourth's cell wicket down on Betancourth's hand. (Doc. 22, ¶ 5; Doc. 22, at 6, 8; Doc. 27-1). While the parties dispute the specifics of the incident, it is undisputed that Betancourth received a misconduct violation and was convicted of refusing to obey an order. (Doc. 22, ¶¶ 6, 7; Doc. 22-3, at 2-3; Doc. 22-4, at 2). In response, he filed several grievances against Officer Knorr. At issue now is whether those grievances have been fully exhausted.

The DOC has established formal procedures for inmates who desire to file grievances against correctional officers for incidents that happen under their care. (Doc. 22, ¶ 8; Doc. 22-4, ¶ 2). These procedures must be "exhausted" before an inmate can file a formal lawsuit against an officer. (Doc. 22, ¶ 8; Doc. 22-4, ¶ 2). The purpose of the grievance system is to allow inmates to bring concerns and complaints to the attention of prison officials and hopefully resolve internally. (Doc. 22, ¶ 8; Doc. 22-4, ¶ 2). The grievance procedures are

2

generally contained in the Department's Administrative Directive 804 ("DC-ADM 804"), titled Inmate Grievance System. (Doc. 22, ¶ 9; Doc. 22-4, at 8-42). DC-ADM 804 details a three-tiered grievance system that an inmate must complete to exhaust their administrative remedies: (1) an initial review by a Grievance Officer; (2) appeal to the Facility Manager or designee; and (3) appeal to the Secretary's Office of Inmate Grievance and Appeals for final review. (Doc. 22, ¶ 10; Doc. 22-4, ¶¶ 3-11). Under DC-ADM 804, a grievance must be submitted in writing using the grievance form available on all housing units or blocks within fifteen working days after the events noted in the grievance. (Doc. 22, ¶ 11; Doc. 22-4, ¶ 3). Once the grievance is received, the Facility Grievance Coordinator assigns it to a Grievance Officer to respond. (Doc. 22, ¶ 13; Doc. 22-4, ¶ 6). If dissatisfied with the Grievance Officer's response, the inmate may appeal to the Facility Manager. (Doc. 22, ¶ 14; Doc. 22-4, ¶ 7). Once the appeal is received, the Facility Manager investigates and provides a written response to the grievance. (Doc. 22, ¶ 15; Doc. 22-4, ¶ 8). The Facility Manager may uphold the response, uphold the inmate, dismiss the grievance (either as untimely or on the merits), or uphold in part and deny in part. (Doc. 22, ¶ 15; Doc. 22-4, ¶ 8). The Facility Manager may also remand the Initial Review Response for further investigation or consideration. (Doc. 22, ¶ 15; Doc. 22-4, ¶ 8). If an inmate is not satisfied with the decision of the Facility Manager, then they may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals. (Doc. 22, ¶ 16; Doc. 22-4, ¶ 9). Only issues raised in both the original grievance and the appeal to the Facility Manager may be appealed to this level. (Doc. 22, ¶ 16; Doc. 22-4, ¶ 9). The Secretary's Office of Inmate Grievances and Appeals then may uphold the response, uphold the inmate, dismiss, or uphold in part and deny in part. (Doc. 22, ¶ 17; Doc. 22-4, ¶ 11). In

order to fully exhaust the grievance procedures, an inmate must appeal their grievance to the Secretary's Office of Inmate Grievances and Appeals. (Doc. 22, ¶ 18; Doc. 22-4, ¶ 12).

Relevant here, DC-ADM 804 includes a section specific to grievances detailing allegations of abuse, as is at issue in this case. Pa. Dept. of Corr. Policy DC-ADM 804 Sec. 1.D. Such grievances "shall be handled in accordance with the Department policy DC-ADM 001, 'Inmate Abuse'" ("DC-ADM 001"). Pa. Dept. of Corr. Policy DC-ADM-804 Sec. 1.D.2.

> A grievance dealing with allegations of abuse shall be handled in accordance with this procedures manual. This may extend the time for responding to the grievance but will not alter the inmate's ability to appeal upon his/her receipt of the Initial Review Response. When a grievance is related to an allegation of abuse, the Grievance Coordinator will issue an Extension Notice to the inmate by checking the box "Notice of Investigation." The Initial Review Response will be completed by the assigned Grievance Officer when the results from BII are received.

Pa. Dept. of Corr. Policy DC-ADM-001 Sec. 1.B.2.4

According to the procedures set forth in DC-ADM 804 and DC-ADM 001, a review of the grievance by a Grievance Officer under DC-ADM 804 only occurs after the results from the DC-ADM 001 investigation are received. (Doc. 22-5, at 19). A DC-ADM 001 investigation is triggered when abuse is reported to Bureau of Investigations and Intelligence ("BII"). (Doc. 22-5, at 19; Doc. 27-4, at 7-8). The BII authors an investigation report and submits their findings for review by the Office of Investigations and Intelligence ("OSII") pursuant to DC-ADM 001. (Doc. 22-5, at 19; Doc. 27-4, at 7-8). DC-ADM 001 dictates that after the BII's report is submitted, "the OSII shall complete its review of the report within 15 business days of receipt." (Doc. 27-4, at 7).

The record in this case reflects that Betancourth attempted to pursue grievances detailing abuse by Officer Knorr through DC-ADM 804, which means he first had to exhaust the procedures outlined in DC-ADM 001. (Doc. 27, ¶ 9). After reviewing the BII reports

4

related to Betancourth's grievances, the OSII did not complete its review until four and a half months after the reports were submitted, well beyond the fifteen-day deadline.[1] (Doc. 27-3; Doc. 27-4). Betancourth nonetheless continued to pursue his grievances but failed to appeal any of his grievances related to the incident with Officer Knorr to final review. (Doc. 22, ¶ 19; Doc. 22-4, ¶¶ 13-15). The issue now up for reconsideration is whether Betancourth was required to do so given the DOC's failure to abide by their own deadlines set under DC-ADM 001. (Doc. 42).

## II.  MOTION FOR RECONSIDERATION

A motion for reconsideration is a device of limited utility which may only be used to correct manifest errors of law or fact or to present newly discovered precedent or evidence. *Harasco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). To prevail, a party seeking reconsideration must demonstrate one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Continental Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995).

---

[1] The report was sent to James C. Barnacle, Director at the Bureau of Investigations and Intelligence at DOC, by Security Lieutenant Corbett and dated May 6, 2020. (Doc. 27-3, at 2). The review and decision were sent by James C. Barnacle to the Superintendent of SCI-Dallas on October 9, 2020. (Doc. 27-3, at 59). Given the fifteen-day deadline, the review should have been sent to the Superintendent on May 28, 2020. (Doc. 27-3, at 2; Doc. 27-4, at 7).

### III. DISCUSSION

Officer Knorr asks this Court to reconsider its decision that administrative remedies became unavailable to Betancourth when the DOC failed to abide by its own deadlines under DC-ADM 001. As detailed *supra*, the procedures laid out in DC-ADM 001 must be completed before a grievance detailing abuse can be reviewed under DC-ADM 804. According to Officer Knorr, the delay caused by the DOC's failure to abide by its own timelines set under DC-ADM 001 is inconsequential because DC-ADM 804 "addresses that there will be delay and that delay will not impact the inmate's ability to appeal, and thus fully exhaust his administrative remedies." (Doc. 45, at 5). Further, because Betancourth did eventually appeal the decision rendered under DC-ADM 001 to his facility manager, he "seemingly accept[ed] this delay." (Doc. 45, at 5). Betancourth disagrees with this position, maintaining that Third Circuit precedent requires the DOC to follow their own policies and procedures and that the DOC's failure to do so "rendered the administrative process unavailable to" Betancourth. (Doc. 46, at 10-12). The Court agrees with Betancourth.

The Prison Litigation Reform Act ("PLRA") requires that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford*, 548 U.S. at 93 (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)). Courts have

concluded that inmates who fail to fully or timely complete the prison grievance process are barred from subsequently litigating claims in federal courts. *See, e.g., Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000); *see also Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008); *see also Jetter v. Beard*, 183 F. App'x 178 (3d Cir. 2006).

In consideration of these principles, the Third Circuit has recognized "what is good for the goose is good for the gander." *Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019). "Just as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies." *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020); *see also Glenn v. Lundy*, No. 23-CV-3294, 2024 WL 2943761, at *5 (E.D. Pa. June 11, 2024). Accordingly, "the PLRA requires that prisoners comply with the procedural demands of a system created by their jailors. No less must prisons comply with the demands of the system they created." *Shifflett*, 934 F.3d at 365. "[A] prison's failure to timely respond to an inmate's properly filed grievance renders its remedies 'unavailable' under the PLRA." *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148 (3d Cir. 2016); Thus, when the DOC disregards its own deadlines, an inmate is "discharged the PLRA's exhaustion requirement." *Shifflett*, 934 F.3d at 365 ("[W]e hold that as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement."); *see Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."); *cf. Ross v. Blake*, 578 U.S. 632, 642 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.").

7

In this case, the DOC failed to abide by its own deadlines and polices; therefore administrative remedies were rendered unavailable to Betancourth. *See Shifflett*, 934 F.3d at 365. Because Betancourth made allegation of abuse against Officer Knorr, he was required to satisfy the requirements of *both* DC-ADM 001 and DC-ADM 804. *See Prater v. Dep't of Corr.*, 76 F.4th 184, 204 (3d Cir. 2023). While, as argued by Officer Knorr, DC-ADM 001 does not provide an alternative method of exhaustion to DC-ADM 804, the procedures of DC-ADM 001 still must be completed *before* review under DC-ADM 804 may proceed. (Doc. 45, at 7); *Prater,* 76 F.4th at 203 (emphasis added). Thus, any delay caused by the DOC under DC-ADM 001 has a direct effect on an inmate's ability to exhaust their remedies under DC-ADM 804. *Prater,* 76 F.4th at 203.

Here, the DOC failed to meet its own deadlines established in DC-ADM 001 by over four months, or as indicated by Betancourth, 134 days.[2] (Doc. 27-3, at 59; Doc. 27-4, at 7;

---

[2] The relevant timeline of events as detailed in the Court's memorandum is as follows:

At issue in this case is grievance # 863893, submitted by Betancourth on April 17, 2020, alleging abuse by Officer Knorr. (Doc. 22-6, at 8). Betancourth also reported the alleged abuse by calling a DOC abuse helpline on April 18, 2020. (Doc. 27-3, at 2, 3, 15, 58). The Bureau of Investigations and Intelligence ("BII") undertook an investigation of Betancourth's allegations detailed in grievance # 863893 pursuant to DC-ADM 001 on April 20, 2020.5 (Doc. 27-3, at 15, 58). According to the procedures set forth in DC-ADM 804, Betancourth was to receive a response from his assigned Grievance Officer under DC-ADM 804 after the Office of Investigations and Intelligence ("OSII") reviewed the BII's report indicating the results of their investigation pursuant DC-ADM 001.6 (Doc. 22-5, at 19; Doc. 27-4, at 7-8). DC-ADM 001 dictates that after the BII's report is submitted, "the OSII shall complete its review of the report within 15 business days of receipt."7 (Doc. 27-4, at 7). This timing is important, as initial review of the grievance by a Grievance Officer pursuant to DC-ADM 804 only occurs after the results from the DC-ADM 001 investigation are received. (Doc. 22-5, at 19); *Prater v. Dep't of Corr.*, 76 F.4th 184, 204 (3d Cir. 2023) ("ADM 804's cross reference to ADM 001 reveals that the two policies work in tandem ... When an inmate brings an abuse grievance, the normal ADM 804 review does not proceed until an investigation occurs in accordance with ADM 001."). The BII submitted their investigative report to the OSII on

8

Doc. 35, at 12; Doc. 46, at 10). This delayed Betancourth's ability to exhaust his administrative remedies under DC-ADM-804 by four and a half months, or as indicated by Betancourth, 134 days. (Doc. 46, at 10). It is inconsequential that Betancourth continued to attempt to exhaust his administrative remedies under DC-ADM 001 and DC-ADM 804 after the DOC submitted the necessary reports far beyond their deadline to do so. *See Robinson*, 831 F.3d at 154 ("[Plaintiff's] decision to accept [the DOC's] belated response in good faith and pursue his claim through the remainder of the belated administrative process does not rectify the prison's errors."). The moment the DOC failed to comply with their own deadlines under DC-ADM 001, Betancourth was "fully discharged the PLRA's exhaustion requirement." *Shifflett*, 934 F.3d at 365.

Officer Knorr takes issue with this conclusion. According to Officer Knorr, the processes under DC-ADM 001 and DC-ADM 804 "are separate until the investigation under ADM 001 is complete" and "'ADM-804 is the exclusive means' by which Pennsylvania prisoners can exhaust their claims under the PLRA." (Doc. 45, at 7-8). *Everett v. Robinson*, No. 22-2890, 2023 WL 6458850, at *2 (3d Cir. Oct. 4, 2023) (not precedential) (quoting *Prater*, 76 F.4th at 204). While this may be true, the separation between DC-ADM 001 and DC-ADM

---

May 6, 2020. (Doc. 27-3, at 2). The OSII did not complete its review of Betancourth's abuse allegations until October 9, 2020, over four and a half months from when it was submitted and well beyond the fifteen-day deadline. (Doc. 27-3, at 59; Doc. 27-4, at 7). On October 14, 2020, Betancourth was notified by his Grievance Officer that grievance # 863893 had been investigated by the BII and his allegations "were deemed unsubstantiated," and therefore under DC-ADM 804, his grievance was denied. (Doc. 22-6, at 7). This delayed Betancourth's appeal of the denial of his grievance to his facility manager to October 21, 2020. (Doc. 22-6, at 6). The appeal of grievance # 863893 to his facility manager was denied on November 9, 2020. (Doc. 22-6, at 5).

(Doc. 35, at 11-13).

9

804 does not provide the DOC with a hall pass to forgo its own deadlines. The Court agrees that had Betancourth and the DOC fully complied with the procedures of DC-ADM 001, this alone would have been insufficient as a means of full exhaustion, as Betancourth still would have needed to complete procedures set under DC-ADM 804. *See Prater*, 76 F.4th at 204. But that is not what happened here. Just as Betancourth had to follow the procedures of both DC-ADM 001 and DC-ADM 804 to fully exhaust his administrative remedies, the DOC was tasked with meeting the deadlines set under both procedures and failed to do. If the Court were to hold that the DOC is not required to abide by its own timelines under DC-ADM 001, then the DOC could effectively block all inmates from bringing grievances of abuse against correctional officers by unjustly delaying or inhibiting their investigations under DC-ADM 001, thus rendering exhaustion under DC-ADM 804 unavailable. *Cf. Prater*, 76 F.4th at 204 ("When an inmate brings an abuse grievance, the normal ADM 804 review does not proceed until an investigation occurs in accordance with ADM 001."). An inmate's "ability to properly exhaust his administrative remedies under DC ADM 804," is dependent on these deadlines being met by both parties.[3] *Everett*, 2023 WL 6458850, at *3. As Officer Knorr himself notes, the Grievance Officer assigned to handle a grievance of abuse under DC-ADM 804 will not respond to the "an abuse-related grievance *until he receives and reviews the documentation from the ADM 001 investigatio*n." (Doc. 45, at 7) (quoting *Prater*, 76 F.4th at 204) (emphasis added). Thus, the Court finds that because Betancourth was required to timely exhaust his administrative remedies under both DC-ADM 001 and DC-ADM 804, the DOC

---

[3] Also, as Betancourth notes, the "delay" anticipated by DC-ADM 804 is premised on the procedures and timelines detailed in DC-ADM 001. Nothing in ADM 804 suggests that an inmate alleging abuse is to be subjected to some unbounded, undefined period of delay during the requisite investigation under ADM 001, as is seemingly argued by Officer Knorr. (Doc. 45, at 5; Doc. 46, at 14).

was required to follow its own polices as they relate to both procedures. The moment the DOC failed to do so, administrative remedies became unavailable to Betancourth. *See Shifflett*, 934 F.3d at 367. The Court finds no clear error or manifest injustice in its March 29, 2024, Memorandum or accompanying Order. (Doc. 35; Doc. 36). Therefore, Office Knorr's motion for reconsideration is to be **DENIED**. (Doc. 42).

IV. CONCLUSION

For the reasons stated herein, Officer Knorr's motion for reconsideration (Doc. 42) is **DENIED**.

An appropriate Order follows.

BY THE COURT:

Dated: July 8, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**